**Colella v. Colella**

C.P. of Armstrong County, no. 1991-0994-CIVIL.

*Jack J. Steiner,* for plaintiff.
*Robert Petrosky,* for defendant.

VALASEK, *J.,* March 30, 2005—Before this court is plaintiff, Michael Colella's, petition for modification of alimony, in which plaintiff alleges that a substantial and continuing change of circumstances warrants discontinuance of his alimony payments to defendant. The court conducted an evidentiary hearing and heard argument on the petition December 29, 2004. Defendant, Nancy Colella, was represented at the hearing by Robert Petrosky as legal counsel and court-appointed guardian ad litem.

## FACTS

The pertinent facts are as follows. The plaintiff and defendant married in November 1987, separated on or about July 1991, and were divorced by decree of this

court on May 10, 1994. An agreement and stipulation providing for equitable distribution of the marital assets, as well as for payment of alimony to the defendant, was attached to and incorporated into the decree.[1] Paragraph 6 of the attached agreement provided:

"Husband shall pay alimony to Wife until the death, remarriage or cohabitation of Wife in the amount of $770 per month. *Said amount to be adjusted annually based upon then applicable Pennsylvania Support Guidelines.* Husband to provide a W-2 and all other sources of revenue each February. Said payments to be made through Armstrong County Domestic Relations Section. Cohabitation shall not include boarding home, nursing home, hospital, community group home or such similar facility where members of the opposite sex may also reside." Agreement, para. 6. (emphasis added)

Paragraph 7 stated, "This agreement *shall be modifiable upon changed circumstances as per the Pennsylvania Divorce Code.*" Agreement, para. 7. (emphasis added)

The most recent court order setting the amount of alimony pursuant to paragraph 6 of the agreement (based upon the recommendation of the Domestic Relations Section of Armstrong County) was entered on February 19, 2004. That order included findings that defendant's monthly net income was $266, plaintiff's monthly net income was $3,723.61, and it directed plaintiff to pay defendant the amount of $1,086 per month alimony. (It also ordered plaintiff to pay 94 percent of defendant's

---

1. The divorce decree provided that the court retained jurisdiction of any claims raised by the parties for which a final order had not yet been entered.

unreimbursed medical expenses that exceed $250 annually.)

Plaintiff then filed a request for a de novo hearing, claiming that, because of changed circumstances, he should no longer have to pay alimony to defendant. After a hearing on April 6, 2004, before James H. Owen, the Domestic Relations Hearing Officer, the hearing officer recommended to the court that the order of February 19 be affirmed. In his findings, the hearing officer stated:

"(6) Plaintiff, Nancy J. Colella, is a resident of the William Penn Care Center in Jeannette, Pennsylvania. She has been a patient there for two years. The plaintiff was diagnosed with MS in 1991 and has been in one care facility or another for quite some time. A printout from the Department of Public Welfare suggesting an adjustment to plaintiff's medical assistance effective April 10, 2003, appears to establish her monthly income as $324.70. *I am compelled to conclude that the determination made by the Domestic Relations Conference Officer pursuant to the annual review was supported* by the facts and evidence presented at the de novo proceeding. *(Notwithstanding the entry of this order, the defendant may still have some recourse to the court in the divorce proceeding to seek to modify the terms of the alimony provision in the parties' divorce settlement.)*" Hearing officer's findings and recommendation, April 21, 2004. (emphasis added)

Plaintiff did not file exceptions to the hearing officer's findings and recommendations, choosing to file a petition for modification of alimony instead.

The record indicates that defendant, who is now 42 years of age, was first diagnosed with multiple sclerosis

in the summer of 1991, somewhere around the time the parties separated. Plaintiff admits that he knew of defendant's MS when he entered into the agreement, and that he agreed to pay defendant permanent alimony because of her MS diagnosis. A Domestic Relations enforcement officer testified that, as of the date of the hearing, the plaintiff had paid $107,372 in alimony to defendant.

It is undisputed that the defendant is now unable to care for herself due to her MS and certain mental health problems. (See medical records admitted as respondent's exhibit A.) Defendant has lived in several nursing homes since 1995 or 1997. Defendant's sole sources of income are $324 per month in SSI and the alimony paid by plaintiff.

According to defendant's attorney and guardian ad litem, plaintiff's alimony payments go in their entirety to the nursing home where defendant resides as payment for her care. Defendant's attorney also stipulated that all but $30 per month of defendant's $324 monthly SSI benefit is paid to the nursing home. The parties agree that the difference between what defendant pays the nursing home and the actual cost of her care has been paid and will continue to be paid by Medicaid. The parties also agree that, whether or not defendant receives alimony, she will continue to receive Medicaid benefits which will provide for her continuing care.

As to plaintiff's situation, plaintiff testified at the hearing that he remarried in February 1995 and became the father of twins in June 1996. He indicated that he has become increasingly responsible for his widowed mother and anticipates her moving in with him "soon." He also

testified that he was having some health problems with his heart.

Although plaintiff testified that his income had increased substantially over the last several years, he also testified that he has greater responsibilities and greater financial needs. Plaintiff contends that his remarriage, the birth of his two children, and his increasing responsibility for his widowed mother constitute a substantial and continuing change of circumstance which warrants the reduction or elimination of alimony.

## DISCUSSION

Because plaintiff's obligation to pay alimony arises from the agreement signed by the parties in 1994, we first look at section 3105(c) of the Divorce Code for guidance regarding the effect of an agreement between parties. Section 3105 states:

"(c) Certain provisions not subject to modification.— *In the absence of a specific provision to the contrary appearing in the agreement, a provision* regarding the disposition of . . . *alimony . . . shall not be subject to modification by the court.*" 23 Pa.C.S. §3105(c). (emphasis added)

The question then becomes whether the language contained in the agreement precludes modification of alimony. The court finds that it does not.

Both paragraph 6 and paragraph 7 of the agreement provide that alimony is modifiable. Paragraph 6 of the agreement outlines a procedure by which Domestic Relations is to annually review and, if necessary, modify the amount of alimony pursuant to Pa.R.C.P. 1910.1 et

seq. (governing support actions).[2] This provision creates a mechanism for adjusting alimony to the relative incomes of the parties, regardless of need, and is an accommodation by the Domestic Relations section of the court to the parties.

Paragraph 7 of the agreement states, "This agreement shall be modifiable upon changed circumstances as per the Pennsylvania Divorce Code." Since the agreement itself provides for alimony to be paid to the defendant, it naturally follows that, if one of the parties to the agreement wishes to modify alimony based upon a change in circumstances, this must be done pursuant to the Divorce Code.

Moreover, in its use of the term "changed circumstances," paragraph 7 clearly refers to section 3701(e) of the Divorce Code, which states:

"*(e) Modification and termination.*—An order entered pursuant to this section is subject to further order of the court *upon changed circumstances of either party of a substantial and continuing nature whereupon the order may be modified,* suspended, terminated or reinstituted or a new order made. . . ." 23 Pa.C.S. §3701(e). (emphasis added) As the language of the agreement unequivocally permits modification, we hold that alimony is modi-

2. Pa.R.C.P. 1910.1, entitled *"Scope. Definitions,"* states that the rules in that chapter "govern all civil actions or proceedings brought . . . *to enforce a duty of support,* or an obligation to pay alimony pendente lite." The note to Rule 1910.1 states, "A duty of support is imposed by the following statutes: 23 Pa.C.S. §4321 and . . . 62 P.S. §1973. . . . *For alimony* and alimony pendente lite, *see sections 3701 and 3702 of the Divorce Code, 23 Pa.C.S. §§3701, 3702."* (emphasis added) It is clear that plaintiff no longer has a duty of support in this case.

fiable in this case under paragraph 7 and the provisions of the Divorce Code pertaining to alimony.

The next issue before the court is whether the plaintiff is barred by res judicata or collateral estoppel from arguing a substantial and continuing change in circumstances. "The doctrine of res judicata holds that an existing final judgment rendered upon the merits, . . . , by a court of competent jurisdiction, *is conclusive of causes of action and of facts or issues thereby litigated,* as to the parties . . . , in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." *Schultz v. Connelly,* 378 Pa. Super. 98, 102 n.4, 548 A.2d 294, 296 n.4 (1988). (emphasis added) (quotations and citations omitted) Under this doctrine, "a valid and final determination by a court of competent jurisdiction settles not only the issues actually raised and determined, but also those that might have been raised." 10 Standard Pa. Practice 2d §65:96, p. 485 (West 2004). (citations omitted)

In this instance, the doctrine of res judicata does not bar the plaintiff from pursuing his claim of a substantial and continuing change of circumstance because the issue has never been submitted to a forum capable of resolving the issue until now.[3] The Domestic Relations conference officers entrusted with making annual adjustments to alimony pursuant to paragraph 6 of the agree-

---

3. Section 3701(a) states: "*the court* may allow alimony, as it deems reasonable, to either party only if it finds that alimony is necessary." (emphasis added) Section 3701(e), entitled "Modification and Termination," states, "An order entered pursuant to this section *is subject to further order of the court upon changed circumstances* of either party of a substantial and continuing nature whereupon the order may be modified, suspended, terminated . . . or a new order made." 23 Pa.C.S. §3701(e). (emphasis added)

ment could only consider the factors outlined in the Rules of Civil Procedure relating to the payment of support and alimony pendente lite. They lacked the jurisdiction to consider changed circumstances pursuant to paragraph 7 of the agreement and 23 Pa.C.S. §3701(e). Because plaintiff properly raised the issue of changed circumstances for the first time in his petition for modification, his claims are not barred by res judicata.[4]

"The doctrine of collateral estoppel is a broader concept than res judicata. It operates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit." *Day v. Volkswagenwerk Aktiengesellschaft,* 318 Pa. Super. 225, 236, 464 A.2d 1313, 1318 (1983). (citations omitted)

"[A] plea of collateral estoppel is valid if, *(1) the issue decided in the prior adjudication was identical* with the one presented in the later action, (2) there was a final judgment on the merits, (3) the party against whom the plea is asserted was a party . . . to the prior adjudication, and (4) *the party against whom it is asserted has had a full and fair opportunity to litigate the issue in . . . question in a prior action." Schultz,* 378 Pa. Super. at 102, 548 A.2d at 296. (emphasis added) (citations and quotations omitted)

---

4. Plaintiff did attempt to raise the issue of changed circumstances in his last annual review, but, as the hearing officer noted, this was not the proper forum to do so. Therefore, his failure to file exceptions to the hearing officer's findings and recommendations does not affect his right to raise the issue of changed circumstances in the instant petition for modification.

As noted above, the issue of plaintiff's substantial and continuing change in circumstance has never before been litigated. The annual reviews conducted by Domestic Relations conference officers merely considered changes in the parties' respective incomes, which was all they were allowed to consider. Because the issues previously litigated are not identical to the issue being litigated now, the doctrine of collateral estoppel does not apply either. It being clear that neither res judicata nor collateral estoppel bar plaintiff's assertion of changed circumstances here, this court will consider plaintiff's claim on its merits, utilizing the factors listed in section 3701(b) as a guide.

The next question is whether the facts of this case warrant modification of alimony. Section 3701(b) states in pertinent part:

"(b) *Factors relevant.*—In determining whether alimony is necessary and in determining the nature, amount, duration and manner of payment of alimony, the court shall consider all relevant factors, including: . . .

"(3) The *sources of income* of both parties, *including, but not limited to, medical, retirement, insurance or other benefits.* . . .

"(7) The extent to which the earning power, expenses, or financial obligations of a party will be affected by reason of serving as the custodian of a minor child. . . .

"(13) The relative needs of the parties."

In the instant case, it is clear that the relative needs as well as the sources of income of the parties have changed in a substantial and continuing way. The defendant now is unable to work or care for herself and requires nursing home or hospital care for the rest of her life. This care

has been and will continue to be paid for by Medicaid, regardless of whether or not plaintiff pays alimony to defendant. Although defendant's need for care has increased over the years, her increased resources (in the form of Medicaid and SSI benefits) adequately meet those needs. Therefore, she has no need for alimony.

On the other hand, plaintiff, who is 51 years of age, now has two eight-and-a-half year-old children to support. In this respect, his financial needs have increased substantially. Moreover, as previously stated, his continuing payment of alimony does not in any way benefit the defendant. Given that the parties were married and living together only about three and one-half years and that plaintiff has already paid more than $107,000 in alimony, it is inequitable under the circumstances to require the plaintiff to continue to pay alimony.[5]

---

5. The fact that these changes arguably were voluntary and foreseeable does not prevent plaintiff from arguing that they constitute a substantial and continuing change in circumstances. See *McFadden v. McFadden,* 386 Pa. Super. 506, 563 A.2d 180 (1989) (husband's knowledge at time of divorce of voluntary retirement almost five years in future did not automatically preclude his seeking modification of alimony payment order at time of retirement). There is no indication that plaintiff acted in bad faith by agreeing to pay alimony and then subsequently getting remarried and having children. See *McFadden,* 386 Pa. Super. 511 n.3, 563 A.2d at 183 n.3 (where master specifically found that husband's retirement was made in good faith, wife should not be allowed to automatically avoid review of the original alimony award simply because original agreement did not expressly plan for retirement). The fact that plaintiff did not file for modification of the alimony award when he first remarried in 1995 or when he had twins in 1996 further supports the court's finding that plaintiff has been acting in good faith.

The crucial fact is that the payment of alimony by plaintiff does not improve the quantity or quality of the care defendant receives at all: she has absolutely no need for it. The court will continue to retain jurisdiction over this case. Should the laws governing defendant's entitlement to the governmental benefits she now relies on change so that alimony payments could significantly benefit the defendant, the court will consider reinstituting alimony at that time. With that caveat, the court will grant plaintiff's petition for modification and order that alimony to defendant be terminated. Plaintiff will pay defendant's reasonable counsel fees.

An appropriate order will be entered.

## ORDER

And now, March 30, 2005, after consideration of plaintiff's petition for modification of alimony, it is ordered, adjudged and decreed that plaintiff's petition be and is hereby granted. Alimony shall be terminated effective immediately. Plaintiff shall pay defendant's reasonable counsel fees within 60 days of the date hereof through the office of Jack J. Steiner, Esq. The court will retain jurisdiction of this case pursuant to the divorce decree of May 10, 1994.