J-S32028-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BARBARA SCHADER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RANDOLPH SCHADER | : | No. 3190 EDA 2023 |

Appeal from the Order Entered December 7, 2023
In the Court of Common Pleas of Delaware County
Civil Division at No: CV-1994-007374

| | | |
|---|---|---|
| BARBARA M. SCHADER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RANDOLPH E. SCHADER | : | |
| | : | |
| Appellant | : | No. 3208 EDA 2023 |

Appeal from the Order Entered December 7, 2023
In the Court of Common Pleas of Delaware County
Civil Division at No: CV-1994-007374

BEFORE: LAZARUS, P.J., STABILE, J., and KING, J.

MEMORANDUM BY STABILE, J.:                **FILED DECEMBER 19, 2024**

In these consolidated cross-appeals, Barbara Schader ("Wife") and Randolph E. Schader ("Husband"), challenge the December 7, 2023, order entered in the Court of Common Pleas of Delaware County (trial court) that denied modification of alimony. Wife claims the trial court erred in not finding a substantial and continuing change of circumstances warranting an increase in alimony. Conversely, Husband claims the trial court erred in not finding a

substantial and continuing change of circumstances warranting a decrease or termination of alimony. Upon review, we affirm.

The parties married on October 12, 1985. Wife initially filed for divorce on June 24, 1994; however, the parties subsequently reconciled. On August 17, 2007, the parties formally separated. After years of litigation, the trial court entered a final order of equitable distribution on May 30, 2013. The parties stipulated that Wife does not have an earning capacity due to her disability. Wife was awarded 60% ($740,566.46) of the martial assets. Husband was assessed an earning capacity of $160,000 and was awarded 40% ($493,710.98) of the marital assets. Additionally, Wife was awarded $20,000 in attorney's fees and $1,000 a month in alimony for eight years.[1]

In 2013, Wife filed for reconsideration of the equitable distribution, as well as the alimony award, and asserted, among several other claims, that "Husband has an earning capacity of at least $250,000 plus an earning capacity through [his parents' Trust] of at least $250,000 giving Husband income the minimum of $500,000." Petition for Reconsideration, 6/10/13, at 12, ¶1. The trial court granted Wife's petition in part and increased her alimony to $1,500 a month for 15 years.[2] Wife appealed, and this Court

---

[1] Wife received approximately $6,400 a month in spousal support and/or alimony *pendente lite* from 2007 until 2015, when the appeal of the equitable distribution award was finalized.

[2] Though not explicitly stated in the order granting reconsideration, we infer, based on the increase of alimony awarded to Wife, that the trial court reassigned Husband an earning capacity between $250,000 and $500,000.

- 2 -

affirmed the award of equitable distribution and alimony. *See Schader v. Schader*, 2492 EDA 2013 (Pa. Super. filed February 10, 2015) (unpublished memorandum). Our Supreme Court denied Wife's petition for allowance of appeal on October 17, 2015, finalizing the equitable distribution proceedings.

On May 20, 2015, Wife petitioned the trial court to modify alimony, claiming that a change in Husband's circumstances justified a higher alimony amount. The initial alimony payments were calculated at a time when Husband asserted that he would soon be unemployed. *See* Petition to Modify, 5/20/15, at ¶ 4. But after the trial court entered the final order of equitable distribution, Husband obtained new employment. *Id.* at ¶ 5. Wife argued that Husband's increased earnings entitled her to a modification. *Id.* at ¶¶ 4-5. She further argued that since the domestic relations court recalculated her spousal support due to Husband's increased income, alimony should be increased to the amount of spousal support, *i.e.*, $6,395 a month.[3] *Id.* at ¶¶ 6-7.

The Honorable Linda Cartisano presided over several hearings on Wife's request for modification. At a hearing held in October 2018, Husband requested that his alimony obligation be decreased or terminated. Three

---

[3] We note that spousal support and alimony are related, yet distinct, legal concepts. Spousal support "is to assure a reasonable living allowance to the party requiring support" and "arises out of the marital relationship itself and terminates when the marriage ends." *Levine v. Levine*, 520 A.2d 466, 468 (Pa. Super. 1987). On the other hand, alimony following divorce is a secondary remedy "to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met." *Crocker-Fasulo*, 292 A.3d at 596.

hearings scheduled in 2019 were never held for reasons that are not apparent from the record. In 2022, Judge Cartisano was transferred out of civil court, and the Honorable Atinuke Moss was assigned to the case.[4]

On July 13, 2023, Judge Moss held an off-the-record pretrial conference regarding Wife's petition to modify. In anticipation of the pretrial conference, both parties submitted memorandums of law. Wife indicated in her memorandum that she now receives half of Husband's social security benefits, and she is now enrolled in Medicare.[5] But she did not provide the monthly amount of social security benefits that she receives.

Husband confirmed that he is now retired and collects social security. He likewise did not provide the monthly amount of the benefit that he receives. On November 20, 2023, Judge Moss denied Wife's petition to increase alimony, as well as Husband's request to decrease or terminate alimony. These cross-appeals followed. Both parties and the trial court complied with Pa.R.A.P. 1925.[6]

Wife now raises three issues for our consideration:

---

[4] Wife petition for the recusal of Judge Moss in January 2023, which was denied after a hearing.

[5] Husband was ordered to provide health insurance for Wife. **See** Final Order of Equitable Distribution, 5/30/13, at 27, ¶2.

[6] Although we decline to find the issues waived for a violation of Pa.R.A.P. 1925(b) as the trial court did, we ultimately conclude that no relief is due. Rule 1925(b) requires an appellant to file a *concise* statement of errors complained of on appeal. Pa.R.A.P. 1925(b)(4). Here, the trial court found Wife's 1925(b) statement impeded appellate review because it raised 18 issues and was not concise. **See** Trial Court Opinion, 4/5/24, at 2-6.

A. Did the [trial] court incorrectly conclude that there was no change of circumstances of a substantial and continuing nature when it failed to modify the alimony order, which had been predicated upon an earning capacity for [Husband] in the amount of $160,000, when the evidence indicates that [Husband] was earning substantially more income and had unlimited access to trust funds for which he was the trustee?

B. Did the [trial] court improperly preclude [Wife] from obtaining the testimony of [Husband's] accountants after President Judge Cartisano held that [Wife] had the right to produce said accountants for testimony concerning the actual income of [Husband]?

C. Did the [trial] court fail to consider the full inheritances of [Husband], when [Husband] is the Trustee and beneficiary of significant trust funds to which he has unfettered access?

Wife's Brief, at 4.

In his cross appeal, Husband raises one issue for our review:

Did the trial court abuse its discretion when it failed to reduce or terminate the alimony award, although the evidence showed that [Husband] is now retired and making far less income, and that [Wife's] income has increased, that she received an inheritance, and is in a better financial situation than she was at the time the alimony order was entered on May 30, 2013 and the reconsidered order on June 19, 2013?

Husband's Brief, at 6.

Our standard of review of an award of alimony is limited to "whether there has been an error of law or abuse of discretion by the trial court. Absent an abuse of discretion or insufficient evidence to sustain the support order, this Court will not interfere with the broad discretion afforded the trial court." *McKernan v. McKernan*, 135 A.3d 1116, 1118 (Pa. Super. 2016) (citation omitted). An abuse of discretion will be found where the trial court "has

overridden or misapplied the law, or has exercised judgment which is manifestly unreasonable, the product of partiality, prejudice, bias or ill will as demonstrated by the evidence of record." *Id.* (citation omitted).

Section 3701 of the Divorce Code allows the trial court to modify alimony to account for the changed circumstance of a party:

> An order entered pursuant to this section is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature whereupon the order may be modified, suspended, terminated or reinstituted or a new order made. Any further order shall apply only to payments accruing subsequent to the petition for the requested relief.

23 Pa.C.S.A. § 3701(e). In deciding "whether alimony is necessary and to establish the appropriate nature, amount, and duration of any alimony payments, the court is required to consider all relevant factors, including the 17 factors that are expressly mandated by [23 Pa.C.S.A. § 3701(b)]." *Crocker-Fasulo v. Fasulo*, 292 A.3d 591, 597 (Pa. Super. 2023) (citation omitted). Those factors include, but are not limited to:

(1) The relative earnings and earning capacities of the parties.

(2) The ages and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

- 6 -

(7)   The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8)   The standard of living of the parties established during the marriage.

(9)   The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10)  The relative assets and liabilities of the parties.

(11)  The property brought to the marriage by either party.

(12)  The contribution of a spouse as homemaker.

(13)  The relative needs of the parties.

(14)  The martial misconduct of either of the parties during the marriage. . . .

(15)  The Federal, State and local tax ramifications of the alimony award.

(16)  Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17)  Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S.A. § 3701(b). We have explained that "the purpose" of alimony is fairness to the parties, not punishment:

Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, alimony following a divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.

***Crocker-Fasulo***, 292 A.3d at 596.

Wife's first claim is that the trial court erred by not finding a change in circumstance of a substantial and continuing nature because Husband provided the trial court with "inadequate information to make a determination of [his] true income and assets." Wife's Brief at 15. While the claim ostensibly concerns alimony, the grounds for modification are rooted in the equitable distribution of Wife and Husband's assets. Yet, the trial court's order of equitable distribution has already been subject to appeal, and this Court upheld the order in ***Schader v. Schader***, 2492 EDA 2013 (Pa. Super. filed February 10, 2015) (unpublished memorandum). The only order now on review is the one in which the trial court denied a modification of alimony. The scope of our review is therefore limited to whether such a modification was erroneously denied.[7]

We discern two incidents that occurred after equitable distribution was final, making them arguably relevant to an alimony determination: (1) Husband amended his tax returns in 2017, dating back to 2012, and (2) between 2015 and 2017, Husband used $1.2 million from a trust to build the

_____

[7] Wife argued in the trial court that Husband committed fraud. ***See*** N.T. Hearing, 1/22/19, at 31, 99-102. A motion to open a divorce decree must be filed within 30 days, or in the case of extrinsic fraud, must be filed within five years. ***See*** 23 Pa.C.S.A. § 3332; ***see also Bardine v. Bardine***, 194 A.3d 150, 153 (Pa. Super. 2018). Wife did not timely file a motion to open the divorce decree; therefore, the trial court properly disregarded her arguments which were based on Husband's asserted fraud.

home he currently resides in.[8]   There was extensive testimony on these subjects, and Husband offered explanations as to why they were not relevant to his income for alimony purposes.

Husband testified that his tax returns were amended in 2017 to correct an issue regarding income generated from a trust.  N.T. Hearing, 10/12/18, at 52; N.T. Hearing, 1/22/19, at 20-21.  Husband became the beneficiary of the Byron K Schader Trust D in 2012 when his father passed away.[9]   He subsequently learned that he was supposed to file tax returns for the income generated by the trust.  *Id.*  Once Husband's accountant sorted through the trust documents and filed the trust tax returns, dating back to 2012, when he became the beneficiary, his personal tax returns were amended to account for the income and to be consistent with the trust tax returns.  *Id.*[10]

_____

[8] Wife's petition was pending in the trial court for eight years, until it was denied by Judge Moss on November 20, 2023.  As mentioned, Judge Cartisano conducted six hearings, and three more were scheduled, but were not held.  Regardless of the reason, there is a gap in the certified record between the date when the hearings were scheduled (April 3, 2019), and the date on which Wife petitioned for the recusal of Judge Moss (January 24, 2023).

[9] Husband's mother and father had reciprocal trusts.  N.T. Hearing, 10/12/18 at 47.  When his mother passed, her trust collapsed into his father's trust.  *Id.* at 46.  After Husband's father passed, he learned that seven trusts were created through the parent trust.  *Id.* at 48.  Husband consolidated the seven trusts, and then split the total value of the trust equally between him and his sister, as intended by his parents.  *Id.*  He is the beneficiary of the Byron K Schader Trust D, and his sister is the beneficiary of the Byron K Schader Trust C.  *Id.*

[10] Husband's sister's personal tax returns were also amended to reflect the income she received from her trust.  N.T., Hearing 10/12/18, at 50.

As to the trust funds used to construct his home, Husband recounted that he purchased the land on which it was built in 2013.[11] Thereafter, Husband took out a line of credit against his trust to build the residence. N.T. Hearing, 1/22/19, at 50-51; N.T. Hearing, 2/12/19, at 28-29. He paid down the line of credit with income he made as an orthodontist, as well as his dividends from the trust and liquidation of trust assets, such as stocks.[12] N.T. Hearing, 1/22/19, at 51, 61, 67-68; N.T. Hearing, 2/12/19, at 31, 37. Once construction was complete, Husband took out a traditional mortgage on the residence and paid the remaining balance on the line of credit. N.T. Hearing, 1/22/19, at 51. Husband did not consider the line of credit nor the liquidation of trust assets to be income that he was required to report on his tax return. N.T. Hearing, 1/22/19, at 63; N.T. Hearing, 2/12/19, at 43. He testified that if there was a capital gain from the liquidation of a trust asset, then that was reported. N.T. Hearing, 2/12/19, at 43.

Wife contends that the trial court erred in accepting Husband's explanations. She insists that Husband received, not loaned, $1.2 million from the trust, and it should have been reported as income on his tax returns. She argues further that Husband amended his tax returns after the equitable

---

[11] Husband created 304 Rolling Hills, LLC to purchase the land. N.T. Hearing, 1/22/19, at 13. The property was subsequently transferred from the LLC into Husband's name. *Id.* at 117.

[12] Husband provided trust documents to show the line of credit, and that it has been paid back in full. *See* N.T. Hearing, 2/12/19, at 27-32, Wife's Exhibit P-14 (USB loan account).

distribution became final "to avoid a direct and transparent disclosure of the actual income and assets available to Husband," and "consistently failed to report any income earned from the Trust that he inherited." Wife's Brief, at 13-14. While acknowledging that there were some changed circumstances due to the parties' collection of social security benefits, and Husband's retirement, the trial court found that such changes were not of a substantial and continuing nature so as to warrant an increase in alimony. *See* Trial Court Opinion, 2/21/24, at ¶¶ 15-16.

We discern no abuse of discretion in that finding. Husband offered credible explanations for (1) why he amended his tax returns and (2) why he did not report that he used $1.2 million from his trust to build his home. Indeed, nothing in the record refutes Husband's explanation that his tax returns were amended to correct earlier reporting mistakes. Nor does the record undercut Husband's assertion that he only received a line of credit against the trust, not an outright payment.

In accepting Husband's explanations, the trial court found him credible, rejecting Wife's allegations that Husband was misrepresenting his finances. The trial court's credibility determinations and findings of fact are supported by the record. Thus, the trial court acted within its discretion, and no relief is

due on Wife's first claim. ***See Lewis v. Lewis***, 234 A.3d 706, 711 (Pa. Super. 2020).[13]

In Wife's second claim, she contends that the trial court precluded her from presenting the testimony of Husband's accountants concerning his actual income. ***See*** Wife's Brief, at 17. Wife argues that the testimony of Husband's accountants was necessary and essential to determine Husband's "true income and assets." ***Id.***

In early 2019, Wife subpoenaed Husband's accountants – Ronald Williams, who prepared Husband's personal returns, and Sandy West, who prepared the trust returns. Both subpoenas made identical requests: "[c]opies of original taxes filed and amended taxes filed on behalf of Gay Schader, Byron Schader, and Randolph Schader, and any confirmation of the filings and all documents presented to you to file the tax returns. Also, any and all accounting performed individually or for the trust." Objection to Subpoena, 2/25/19, Exhibit A; Motion to Quash Subpoena, 2/26/19, Exhibit

---

[13] Wife makes additional arguments about Husband's lack of credibility and alleged fraudulent behavior – that he failed to disclose during the equitable distribution hearing that (1) he sold a trust asset (Florida condominium) for $950,000; (2) he sold his parents' condominium in Elkins Park for $195,000; (3) he received dividends and/or rental income from Weiner & Engle, LLC, also known as Management Consortium, LLC, and (4) the sale of Splash Zone in Wildwood was a sham transaction. ***See*** Wife's Brief, at 13-16; ***see also*** N.T. Hearing, 10/12/18, at 118; N.T. Hearing, 1/22/19, at 59, 72-73; N.T. Hearing, 2/12/19, at 68-69, 91-92; N.T. Hearing, 3/25/19, at 63. As previously mentioned, equitable distribution is closed, and Wife did not file a timely motion to open it pursuant to 23 Pa.C.S.A. § 3322. As such, these claims are not before us.

A. Gay and Byron Schader are Husband's deceased parents. Husband filed objections to and a motion to quash both subpoenas.

Judge Cartisano heard argument on the subpoenas and ruled that Husband's parents' tax returns were not relevant to his income. *See* N.T. Hearing, 3/25/19, at 23. However, the trial court determined that "[t]he accountant can testify as to what assets went in the Trust and if any assets were given to [Husband] and his sister directly." *Id.* at 24. Moreover, Judge Cartisano ruled that Wife was permitted to ask Mr. Williams to verify the documents submitted by Husband that were used to complete the tax returns. *Id.* at 30.

On August 7, 2023, after the case was transferred, Judge Moss sent counsel an email inquiring whether the parties wanted a hearing on Wife's petition to modify, or if they were content with only briefing the issues. *See* Trial Court Opinion, 4/5/24, attached emails. On August 8, 2023, Wife's counsel agreed to brief the issues. *See id.*

Wife provides no legal authority and does not put forth a cogent argument as to why an error on the part of the trial court entitles her to relief. There were extensive testimony and exhibits presented regarding Husband's income, including his trust. She does not explain what relevant information Husband's accountants would have provided, other than to further challenge his credibility. "Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."

- 13 -

*Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009). Accordingly, we find Wife's second issue waived.

Wife's third claim is that the trial court failed to consider the total value of Husband's inheritance in determining his income. *See* Wife's Brief, at 18. She asserts that "[Husband] had easy and unrestricted access to millions of dollars at the time of the equitable distribution hearings at which time, the alimony order was issued." *Id.* This claim has no merit.

When deciding an award of alimony, the trial court must consider all relevant factors, including the 17 factors enumerated in 23 Pa.C.S.A. § 3701(b). *See Crocker-Fasulo v. Fasulo*, 292 A.3d at 597. Here, the trial court acknowledged that both parties received distributions from their respective inheritances when it denied modification of alimony. The trial court also noted that their inheritances were considered when it entered the final equitable distribution order. *See* Trial Court Opinion, 5/20/23, at ¶ 18.

There is nothing in the record to indicate the trial court abused its discretion or erred as a matter of law. Husband provided Wife financial statements showing the amount of money in his trust, and those statements were entered into the record as trial exhibits. *See* N.T., Hearing 3/25/19, at 42-44, Wife's Exhibits P-15 and P-16. "This Court has consistently held that there is a presumption that when a court has a set of facts in its possession, it will apply those facts" and we "do not require the court to prove that it reviewed the entire record by citing to each and every circumstance it

considered in its findings." ***Commonwealth v. Wallace***, 97 A.3d 310 (Pa. 2014) (citations omitted).

Accordingly, we conclude that the trial court did not abuse its discretion or err as a matter of law when it denied Wife's petition to modify alimony because the value of Husband's inheritance is presumed to have been considered.

We now turn to Husband's cross-appeal. He claims that the trial court erred in ruling that there was no change in his circumstances which justified a decrease or termination of alimony. The factual basis of his claim is that after the equitable distribution order became final, he "retired . . . and is thus making far less income than the $500,000 he was attributed with earning." Husband's Brief, at 16. He contends his only sources of income are social security and his inheritance. ***Id.*** at 17. Additionally, Husband claims that Wife's circumstance changed because her income increased after the equitable distribution order was entered. ***Id.*** at 18-19.

As previously stated, while acknowledging that there were some changed circumstances due to the parties' collection of social security benefits, and Husband's retirement, the trial court found that such changes were not of a substantial and continuing nature so as to warrant a decrease in alimony. ***See*** Trial Court Opinion, 2/21/24, at ¶¶ 15-16.

We discern no abuse of discretion or error of law in that finding. The record before us indicates that the trial court heard extensive testimony from both parties regarding their respective incomes, ability to work, living

- 15 -

expenses, and other information relevant to the alimony factors. We presume that the trial court considered all the evidence before denying Husband's request to decrease or terminate alimony[14]. ***See Wallace, supra.*** Thus, no relief is due on this claim.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/19/2024

_____

[14] We note that Wife's alimony will terminate in 2028. ***See*** Order, 6/19/13.